UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LEON MCBURROWS,**<br><br>                       **Plaintiff,**<br><br>v.<br><br>**VERIZON, et al.,**<br><br>                       **Defendants.** | Civ. No. 15-cv-6321 (KM)<br><br>**OPINION** |

The plaintiff, Leon McBurrows, originally filed this action in state court against, among others, Verizon Employee Benefits Committee ("VEBC"), the Verizon Claims Review Committee ("VCRC") (together, the "Plan Committees"), and Verizon New Jersey, Inc. ("Verizon").[1] The defendants removed the case to federal court because claims based the denial of disability and health insurance benefits is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), *see* 29 U.S.C. §§ 1132 & 1144. The defendants then moved to dismiss the complaint on the grounds that it *failed* to state an ERISA claim. I filed a short order noting that the plaintiffs had neither ERISA nor federal pleading standards in mind when they filed their state-court complaint, dismissing the complaint without prejudice, and granting leave to file an amended complaint. (ECF no. 15) The plaintiff did file his First Amended Complaint. (ECF no. 16, referred to herein as the "Complaint," and cited as "1AC")[2] It contains six counts, which are discussed below.

---

[1] Defendant states that this is the correct name of the entity sued as "Verizon" or "Verizon Communications Inc." MetLife Insurance Company, originally named as a defendant, was dismissed without prejudice by consent order. (ECF no. 20)

[2] The counts of the Amended Complaint are numbered separately. In citations, I will refer to the Count number and the paragraph number. Thus "AC 2 ¶1" means Amended Complaint Count 2, paragraph 1.

Now before the court are the motion of defendants VEBC and VCRC (ECF no. 21) and the motion of defendant Verizon, Inc. (ECF no. 23) under Fed. R. Civ. P. 12(b)(6) to dismiss the amended complaint for failure to state a claim upon which relief may be granted. The plaintiff has filed a brief in opposition (ECF no. 24), and the defendants have filed replies (ECF nos. 25, 26). For the reasons expressed herein, the motions to dismiss are granted as to Count 1, and denied as to Counts 2–6.

## I.     Standards Governing Motion to Dismiss

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

## II.   Analysis

### A.   Counts 3, 4, and 5

Counts 3, 4, and 5 are vague as to the particular cause of action that is intended. All, however, seem to revolve around the denial of short term or long term disability benefits. Although my order dismissing the original complaint advised the plaintiff to plead an ERISA claim, the amended complaint does not so much as mention ERISA. Because of the breadth of preemption, however, I think I must nevertheless treat Counts 3, 4, and 5 as ERISA claims.

As for Count 3, the heart of the claim seems to be the allegedly wrongful denial of short term and long term disability benefits from 2013 to 2015. (AC 3 ¶ 6) Count 3 repeats the allegations of wrongful termination, prejudice, harassment, and so on, but these seem to be pled as adjuncts to the main claim. That is, the denial of disability benefits is portrayed as the cause of the plaintiff's leave without pay and eventual termination, or as a failure to "rectify" those other wrongs. (AC 3 ¶ 9)

Count 4 alleges that VEBC and VERC contracted with MetLife to administer its disability insurance plan, and that Mr. McBurrows was a third party beneficiary of that contract. (AC 4 ¶ 4) He alleges that he selected Long Term Disability at 66 2/3% of salary. (AC 4 ¶ 7) He was informed that his short term disability benefits were exhausted as of August 12, 2014. (AC 4 ¶ 10) He seems to allege that he expected long term benefits to then kick in, but was informed that his LTD coverage had expired in January 2011, without warning. (AC 4 ¶ 11)

Count 5 alleges that VEBC and VERC caused a breach of Mr. McBurrows's employment contract, and also his rights as third party beneficiary of a contract between Verizon and MetLife. The conduct is also said

to be tortious, though no tort is specified. The gist of the count, however, is that the defendants failed to provide proper disability benefits, and gave faulty advice regarding Mr. McBurrows's coverage in 2013-15. (AC 5 ¶¶ 6-7)

Section 502(a)(1)(B) of ERISA states that a "civil action may be brought ... by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 514 provides that ERISA preempts "any and all State laws" that relate to any covered employee benefit plan. 29 U.S.C. § 1144. The Supreme Court has interpreted "relate to" to mean "if [the claim] has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). A covered employee benefit plan includes one established or maintained "by any employer engaged in commerce or in any industry or activity affecting commerce . . . ." 29 U.S.C. § 1003.

In *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), the Supreme Court explained the reach of ERISA preemption. "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.* at 208. Therefore, "ERISA includes expansive preemption provisions, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id.* (quotation and citations omitted). Section 502(a) is the "integrated enforcement mechanism" for ERISA remedies. *Id.* "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209. "Thus, the ERISA civil enforcement mechanism is [a] provision with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65-66 (1987)). Therefore, "causes of actions that fall within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Davila,* 542 U.S. at 209

(quoting *Metropolitan Life,* 481 U.S. at 66)). "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where no other independent legal duty is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Davila,* 542 U.S. at 210. In short, it is common for claims, although pled as state law tort or contract claims, to be preemptively treated as ERISA claims. *See Davila, supra* (breach of contract, fraud, tort, bad faith claims preempted); *Taylor, supra* (breach of contract and tort claims preempted); *see also Cooper v. Alliance Oral Surger, LLC,* 586 F. App'x 100, 101 (3d Cir. 2014) (state law claim based on failure to enroll plaintiff).

Counts 3, 4, and 5, however vaguely, cite state tort and contract law. But they allege in essence that Mr. McBurrows was wrongfully denied short term and long term disability benefits. The complaint was removed from state court to federal court based on ERISA preemption, and the plaintiff did not seek to remand. In opposing the defendants' initial motion to dismiss, the plaintiff seemingly embraced ERISA as the foundation for his claims. (*See* ECF no. 10 at 22.)[3] And there seems to be no dispute that this is an ERISA-covered plan under 29 U.S.C. § 1001(1). Of course, if I have misinterpreted the claims, the plaintiff may seek leave to file an amended complaint in which he does specifically allege the elements of some other applicable cause of action in a way that demonstrates that it is not preempted.

---

[3] The Third Circuit, echoing *Davila,* has established a two-pronged approach to determining whether a state law claim is preempted by ERISA. A state claim may is preempted "only if (1) the [plaintiff] could have brought its . . . claim under § 502(a), and (2) no other legal duty supports the [plaintiff's] claim." *Pascack Valley Hosp., Inc., v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 400 (3d Cir. 2004).

Counts 3, 4, and 5 assert that plaintiff was entitled to disability benefits under the plan, but was denied them. They are properly treated as ERISA claims. Counts 1 and 2, by contrast, allege employment-related discrimination based on disability. Such claims are distinct from ERISA, and would not be preempted. I therefore analyze them on their own terms, as pled. *See infra.*

Defendants cite a number of threshold grounds to dismiss these claims, understood as ERISA claims. Chief among them is failure to exhaust administrative remedies, and the absence of any exception to the exhaustion requirement, such as futility. This defense, however, relies on facts extrinsic to the complaint, and is best considered in connection with a motion for summary judgment.

**B.   Count 1**

Count 1 is not titled, and the cause of action is not clearly identified. Referred to in passing are breach of express and implied contract, the New Jersey Law Against Discrimination ("NJLAD"), the New Jersey Constitution, "tortious behavior," "wrongful conduct," and negligence. (AC 1 ¶¶ 11–12) No particular tort, contract, or provision of the state Constitution is identified.

Factually, Count 1 alleges that Mr. McBurrows, an African-American male, was employed by Verizon. (AC 1 ¶¶ 1, 4) He believes he ceased being a union employee and became an executive employee starting in 1995. (AC 1 ¶ 2) In 2012 his job title was Senior Process Engineer, and he was selected for Lean Six Sigma training. He worked 7 days a week in a very high pressure job. (AC 1 ¶ 3) From approximately 2010 through August 13, 2013, Mr. McBurrows alleges, he was placed in a "pervasive hostile work environment ... with racial prejudice, age prejudice, prejudice on the basis of educational accomplishment, and prejudice on the basis of disability." (AC 1 ¶ 9) As a result his work performance, his promotions, job status, and pay status, were impaired. (AC 1 ¶ 10) The result was allegedly physical injury and disability, including psychological trauma, a stroke, and a seizure. (AC 1 ¶¶ 14–15) Mr. McBurrows suffered a stroke while working and I gather from the exhibits that he went out on medical leave in August 2013. Medical records are attached as an Appendix.

No breach of contract or tort is identified. As to discrimination based on age, race, or educational attainments, literally no facts are alleged.

Based on the factual allegations, however, I find that Count 1 may have been intended as a claim of disability discrimination under the NJLAD. NJLAD makes it unlawful to discriminate based on, among other things, race, age, or mental or physical disability. To establish a prima facie hostile work environment claim, the plaintiff employee must show (1) that the conduct complained of would not have occurred but for the employee's membership in a protected class, and (2) that the conduct was severe or pervasive enough to make a reasonable person believe that the conditions of employment were altered and the working environment was hostile or abusive. *Lehmann v. Toys 'R' Us, Inc.,* 132 N.J. 587, 626 A.2d 445, 453–54 (1993); *Taylor v. Metzger,* 152 N.J. 490, 706 A.2d 685, 688–89 (1998).

All that is alleged in Count 1, however, is that the stress of the job caused Mr. McBurrows to suffer a stroke in August 2013. There are no facts pled suggesting that he was discriminated against *because* of a physical or mental disability. Count 1 is therefore dismissed in its entirety.

### C.   Count 2

Count 2, like Count 1, does not clearly specify the particular cause of action being pled. Count 2 focuses on the post-August 2013 period, *i.e.,* the period following Mr. McBurrows's stroke. It alleges that, as a result of the stroke, he suffered from multiple disabilities.

Again, Defendants are said to have acted "tortiously" and in "breach of contract," although no particular tort, contract, or breach is identified. (AC 2 ¶ 4) Again, any claim based on age, race, or educational attainments is unsupported by any factual allegations.

I will, however, interpret Count 2 as a claim of failure to accommodate a disability, in violation of NJLAD. A plaintiff asserting a claim for failure to accommodate a disability under the NJLAD must prove that: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make

a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Ross v. New Jersey Dep't of Human Servs.*, No. A-0146-14T4, 2015 WL 11123301, at *4 (N.J. Super. Ct. App. Div. July 13, 2016) (quoting *Tynan v. Vicinage 13 of Superior Court*, 351 N.J. Super. 385, 400–401 (App. Div. 2002)).

Factually, Count 2 alleges that the defendant coerced Mr. McBurrows into returning to his job in June–July 2014. He was placed on the "Jep Desk," a job that required him to dispatch technicians to the homes of disgruntled Verizon customers. (AC 2 ¶ 2) This allegedly caused stress and a hostile work environment, amounting to a "fail[ure] to provide proper accommodation for the disability" of Mr. McBurrows. (AC 2 ¶ 3) Defendants did not provide him with "independent consultations, psychiatric, orthopedic, medical and neurological," and his return to work exacerbated his physical and psychological disabilities, brought on by his August 2013 stroke. (AC 2 ¶ 4)

Count 2 attaches exhibits. (ECF no. 16-2) Here is a sampling of communications between Mr. McBurrows and Verizon. Exhibit H is a June 17, 2014 letter from Verizon to Mr. McBurrows, stating that a claim has been denied by Metlife, that he is expected to return to work, and that he may request an accommodation. Exhibit G is a July 1, 2014, request for accommodation form requesting that he be permitted to work half days for six months. Exhibit M, dated August 11, 2014, is a communication from Verizon to the effect that they are willing to provide a reasonable accommodation; that MetLife administers disability decisions and reviews medical records; that Mr. McBurrows had not medically documented his need for the requested accommodation; and that he should do so within seven days. A followup email states that Mr. McBurrows was now claiming not to be able to work at all; a letter dated October 3, 2014, states that Mr. McBurrows had not provided adequate documentation; that he had been working a few hours per day and leaving without notice or approval; and that he would be placed on unpaid

leave, subject to his ability to return for full duty or with a reasonable accommodation. Exhibit O, dated June 25, 2015, reflects that Mr. McBurrows has not returned to work, that his current leave of absence had expired, and that his position was being terminated.

I will deny the motion to dismiss Count 2, understood as a NJLAD claim. Mr. McBurrows alleges that following his stroke, he was suffering from a mental and physical disability that limited the work he could do. He alleges that he requested an accommodation that would permit him to keep working but did not receive it. At the pleading stage, that is enough.

### D.   Count 6

Count 6 is a demand for punitive damages on Counts 1–5. True, it is not a standalone cause of action at all. Defendants' argument for its dismissal, however, is based on the rejected contention that all of the causes of action are preempted by ERISA, which does not provide for punitive damages. As it stands, this count is no more than a notification that a particular form of damages may be sought. I will not now dismiss it.

### CONCLUSION

Counts 1 and 2 are interpreted solely as disability-related claims under the New Jersey Law against discrimination. The motions to dismiss (ECF nos. 21, 23) are GRANTED as to Count 1, without prejudice to the submission of a properly supported motion to amend within 30 days. The motions to dismiss (ECF nos. 21, 23) are DENIED as to Counts 2, 3, 4, 5, and 6.

Dated:  February 17, 2017

**KEVIN MCNULTY**
**United States District Judge**