## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**LEON MCBURROWS,**

**Plaintiff,**

v.

**VERIZON, et al.,**

**Defendants.**

Civ. No. 15-cv-06321 (KM)(JAD)

**OPINION**

### KEVIN MCNULTY, U.S.D.J.:

Plaintiff Leon McBurrows asserts claims against Verizon Employee Benefits committee ("VEBC") and the Verizon Claims Review Committee ("VCRC") (together, the "Plan Committees") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.*, for the alleged wrongful denial of disability benefits. He sues Verizon New Jersey, Inc. ("Verizon")[1] under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12.

On October 12, 2018, the Plan Committees filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 (DE 74),[2] which I granted by Order

---

[1] Defendant states that this is the correct name of the entity sued as "Verizon" or "Verizon Communications Inc." MetLife Insurance Company, originally named as a defendant, was dismissed without prejudice by consent order. (DE 20).

[2] Record items will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated.

| | | |
|---|---|---|
| "DE ___" | = | Docket Entry Number |
| "FAC" | = | First Amended Complaint (DE 16) |
| "SAC" | = | Second Amended Complaint (DE 53). The paragraphs each count of the Second Amended Complaint are numbered separately. In citations, I will refer to the Count number and paragraph |

1

(DE 110) and Opinion ("Plan Opinion", DE 109). Now before the Court is Verizon's motion for summary judgment pursuant to Fed. R. Civ. P. 56 (DE 103); Mr. McBurrows's cross-motion for summary judgment (DE 111); and Mr. McBurrows's motion for reconsideration (DE 120) of my Order and Plan Opinion granting summary judgment to the Plan Committees.

Mr. McBurrows alleges credibly that he currently suffers from a long-term disability. While employed by Verizon, however, he never opted to purchase long-term disability insurance, despite being given the annual opportunity to do so. This lawsuit, I reluctantly hold, cannot be used as a backdoor means of obtaining such long-term benefits retroactively. For the reasons expressed herein, I must conclude that Verizon acted reasonably in offering the option to purchase long-term disability insurance, in granting and extending short-term disability benefits, and in attempting to accommodate Mr. McBurrows's disability to permit continued employment.

For the reasons explained in this opinion, I will grant Verizon's motion for summary judgment and deny Mr. McBurrows's cross-motion for summary judgment and motion for reconsideration.

## I.    **Summary**

### A.    **Procedural History**

Mr. McBurrows originally filed this action in state court against Verizon and a number of other defendants. Verizon removed the case to federal court based on federal question jurisdiction because the claims were based on the denial of disability and health insurance benefits, and hence were preempted by ERISA. *See* 29 U.S.C. §§ 1132 and 1144. The defendants subsequently moved to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (DE 7.) I granted defendants' motion to dismiss without

---

|                   |   | number. Thus "SAC 2 ¶ 1" means Second Amended Complaint Count 2, paragraph 1. |
|-------------------|---|---|
| "Plan Opinion"    | = | Opinion granting motion for summary judgment of Plan Committees, DE 109 |

prejudice to amendment. (DE 15.) On May 11, 2016, Plaintiff filed his first amended complaint ("FAC"), which added the Plan Committees as additional defendants. (DE 16.)

Defendants then moved to dismiss the FAC pursuant to Rule 12(b)(6). (DE 21; DE 23). In an Opinion dated February 17, 2017, I dismissed without prejudice Count 1 of the FAC, which I interpreted as a NJLAD claim of disability discrimination asserted against Verizon, and denied the motion to dismiss with respect to the remaining Counts. (DE 33, 34).[3] *McBurrows v. Verizon*, No. 15-cv-6321 (KM), 2017 WL 1243145, at *1 (D.N.J. Feb. 17, 2017).

On March 20, 2017, Plaintiff filed a motion for leave to amend the FAC. (DE 39; DE 42.) In a Letter Order dated October 31, 2017, Magistrate Judge Dickson granted Plaintiff's motion for leave to file a second amended complaint with respect to FAC Counts 2–6, but denied Plaintiff's motion with respect to FAC Count 1, which appeared to be a compound claim of age, race, and disability discrimination pursuant to NJLAD (with some indications of a claim for breach of express and implied contract). Consistent with Judge Dickson's Letter Order, Plaintiff filed his SAC, which omitted the claim for age, race, and disability discrimination under NJLAD, and is the current operative pleading. (DE 53.) As stated above, the Plan Committees subsequently filed a motion for summary judgment, which I granted.[4] (DE 109, 110.)

Now before the Court is Verizon's motion for summary judgment on Count 1 of the SAC, Plaintiff's cross-motion for summary judgment, and

---

[3] Plaintiff's FAC failed to clearly identify the causes of action for each of the counts asserted against Defendants. In my Opinion to the Motion to Dismiss, I interpreted Count 1 to be a claim of disability discrimination under the NJLAD; Count 2 to be a claim of failure to accommodate a disability in violation of the NJLAD; Counts 3, 4, and 5 to be ERISA claims, and Count 6 to be one for punitive damages, which I noted is not a standalone cause of action. (DE 33).

[4] Although the Plan Committees' motion for summary judgment did not clearly specify the relevant Counts, I interpreted Counts 3, 4, and 5 of the SAC as ERISA claims asserted against the Plan Committees. *See McBurrows v. Verizon*, No. 15-CV-6321, 2019 WL 2432088, at *1 (D.N.J. June 11, 2019).

Plaintiff's motion for reconsideration of my prior order granting summary judgment to the Plan Committees. (DE 103, DE 117, DE 120.)

## A. Facts[5]

Mr. McBurrows was employed by Verizon in various capacities from approximately 1986 through June 2015. (DE 79-2 at 4.) In 2012, Plaintiff

---

[5] Plaintiff in his opposition brief and cross-motion for summary judgment (DE 111) failed to comply with the requirements of Federal Rule of Civil Procedure 56 and Local Rule 56.1. Local Rule 56.1 states in part, "[t]he opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." Plaintiff's responsive statement of material facts does comply with the requirement that he admit or deny the contentions in Verizon's statement of facts. Plaintiff's statements of fact, however, do not cite to the factual record or any of the "appendices" he submitted with his brief.

Local Rule 56.1 requires that "each statement of material facts shall be a separate document (not part of a brief)." Plaintiff's statements of fact were not submitted in a separate document as required by the rule, but were appended to his brief. Finally, Plaintiff's "Further Explanations of Denials, in Whole and in Part" (apparently intended as a responsive statement of facts), are filled with legal arguments and conclusions of law in contravention of Local Rule 56.1.

Fed. R. Civ. P. 56(c) states that the court need only consider the materials cited by the parties, although it may consider other materials in the record. If a party fails to address the other party's properly supported assertion of fact, the court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement. L. Civ. R. 56(a). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, Civ. No. 08-3975, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (quoting *Anchorage Assocs.*, 922 F.2d at 175)).

In order to avoid disadvantage to the Plaintiff, I have relied on Verizon's statement of facts which Plaintiff has *not* disputed in his responsive statement of facts to build the factual background. For the facts which Plaintiff has disputed, I have

became the Senior Process Engineer in the Company's Lean Six Sigma Program. (DE 103-8 ¶ 5.) In that position, Plaintiff was responsible for reviewing and improving the efficacy of Verizon's business processes. (*Id.* ¶ 6.) Plaintiff held the position of Senior Process Engineer as of August 13, 2013. (*Id.* ¶ 7.)

On August 13, 2013, while at work, Plaintiff suffered a stroke. (*Id.* ¶ 8.) He was subsequently diagnosed with an intracerebral hemorrhage and cerebral venous thrombosis. (*Id.* ¶ 10.) Because Plaintiff was unable to return to work, he applied for a Family Medical Leave Act ("FMLA") leave of absence and for short-term disability ("STD") benefits. (*Id.* ¶ 11.) Verizon's third-party benefits administrator, Metropolitan Life Insurance Company ("MetLife") approved Plaintiff's FMLA leave of absence effective from August 14, 2013 through November 5, 2013, and his request for STD benefits from August 14, 2013 through February 23, 2014. (*Id.* ¶¶ 13, 15.) Plaintiff testified that as of February 23, 2014, his physical condition still rendered him unable to return

---

disregarded those that are argumentative or legal conclusions and have looked at the exhibits and appendices for corroboration.

Additionally, Plaintiff has attempted to supplement the summary judgment record through letter submissions attaching deposition transcripts and exhibits that he failed to submit with his summary judgment briefing. (*See* DE 136, 137.) I will not supplement the record. To begin with, the proper vehicle for such a request would be a motion, not a letter simply dumping the transcripts into the electronic docket file. Second, counsel's alleged justification for the late submission is inadequate. He states that "in [senior counsel's] training and experience all transcripts in civil cases were filed in the Federal Court automatically or so he thought when he prepared the opposition" to Verizon's motion for summary judgment. (DE 136 at 2). That is assuredly not the practice of this court. Even if it were, it would not relieve counsel of his duty to cite to the relevant portions of the record on which he relies—which he does not, relying instead on general statements that the belatedly-submitted materials are "important." (DE 136 at 1) I will therefore strike Plaintiff's belated submissions (DE 136, 137), and will not consider them in connection with Verizon's motion for summary judgment. *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (even where proper motion had been made, affirming denial where there was no showing that supplemental materials were unavailable when the motion papers were filed); *Garcia v. Newtown Twp.*, 483 F. App'x 697, 705 (3d Cir. 2012) (affirming district court's denial of the plaintiff's untimely attempt to supplement the record after discovery had closed and after motions for summary judgment had been filed).

to work. (*Id.* ¶ 16.) Plaintiff also applied to receive long-term disability ("LTD") benefits with MetLife, but his application was denied because he had failed to opt in for LTD benefits under Verizon's Disability Benefits Plan. (*Id.* ¶ 12.)

By letter dated June 17, 2014, MetLife informed Plaintiff that his claim for STD benefits was terminated as of May 25, 2014. The medical information they reviewed, said MetLife, no longer supported a finding that Plaintiff was unable to perform the "sedentary duties of [Plaintiff's] own job." (DE 103-3, Ex. 10.) Through another letter, also dated June 17, 2014, Tom Nugent, Director of Operations at Verizon, informed Plaintiff that pursuant to MetLife's termination of his STD benefits, Plaintiff was on an unauthorized absence and expected to return to work. (*Id.*, Ex. 12.) Mr. Nugent's letter also informed Plaintiff that if there was a workplace arrangement or accommodation that would enable Plaintiff to return to work, he should contact Verizon or complete and return an Accommodation Request form no later than Friday, June 20, 2014. (*Id.*) Plaintiff submitted the Accommodation Request form requesting to return to work on a part-time work schedule. Plaintiff's neurologist, Dr. Olajide Williams, thereafter submitted a completed medical questionnaire as part of Plaintiff's accommodation request. (DE 103-6, Ex. 6.) However, MetLife denied the accommodation request, finding that it was not medically substantiated. (DE 103-3, Ex. 18.) The email notifying Plaintiff of the denial also instructed him that if he disagreed with MetLife's determination that he should have his "health care provider respond to MetLife directly to address these concerns." (*Id.*)

Mr. McBurrows attempted to return to work on a full-time basis on July 14, 2014. (DE 103-8 ¶ 25.) Upon his return, he was no longer employed as a Senior Process Engineer, but was given a different role as the JEP Desk Manager. (*Id.* ¶ 27.) Plaintiff was not required to take a reduction in pay when he was moved to the new position. (*Id.* ¶ 31.) In his new role, Plaintiff reported directly to James Dacey, and was expected to work on a full-time basis. (*Id.* ¶¶

33–34.) From July 14 – August 4, 2014, Plaintiff either left work early or missed workdays due to his physical condition.[6] (*Id.* ¶ 35–41.)

By an email dated July 23, 2014, Plaintiff informed Mr. Dacey of the days that he would be taking off due to his physical condition, and that during that time he would be gathering the required medical documents to request for a workplace accommodation. (*Id.* ¶ 42.) On July 24, 2014, Ms. Linda Cerminaro, a member of Verizon's Workplace Accommodations Team informed Mr. McBurrows that Verizon would permit him to work half days until August 6, 2014, so that he would have more time to submit additional information regarding his workplace accommodation request. (DE 103-3, Ex. 18.) Plaintiff did not submit any additional documents for his workplace accommodation request. (DE 103-3, Ex. 15.) Plaintiff testified at his deposition that he did not submit additional medical documentation because he felt that he had already provided a sufficient amount of information to Verizon and MetLife. (DE 103-3, Pl. Dep. Tr. at 261:18–264:15.) Plaintiff also testified that he believed that as of July 23, 2014, he was unable to work given his physical condition. (*Id.* at 292:10–297:24.) Plaintiff informed Mr. Dacey that because of his physical limitations, he was unable to perform the essential functions of the JEP Desk Manager job. (DE 103-4, Pl. Dep. Tr. at 413:12–414:10.)

In a letter dated July 23, 2014, Plaintiff's attorney informed MetLife, that according to Dr. Williams, Mr. McBurrows would not be able "to resume regular employment until at least June 2015 and that he may be under permanent lifetime disability and/or care." (DE 103-3, Ex. 23.) In response to this letter, Anthony DiVito, Human Resources Business Partner at Verizon, sent a letter in which he requested Plaintiff's counsel to clarify whether Plaintiff would be reporting to work as scheduled on August 5, 2014. If he was unable to do so, Mr. DiVito wrote, he should contact Ms. Cerminaro to provide the necessary paperwork for review. Mr. DiVito's letter also informed Plaintiff's

---

[6] From July 24, 2014 – August 5, 2014, Plaintiff took vacation days and bereavement days due to the death of his father. (DE 103-4, Ex. 28.)

attorney that to date, Plaintiff had not submitted any additional paperwork to support his workplace accommodation request to work on a part-time basis. (DE 103-8 ¶ 50–51.)

Nevertheless, Plaintiff returned to work on August 5, 2014. He was informed that because his request to work on a part-time basis had been denied, he was expected to work on a full-time schedule. (*Id.* ¶ 55.) That day, and for the rest of the week, Plaintiff either left work early or was unable to go to work because of his physical condition, which included head pain, fogginess, headaches, and at times feeling "slightly incoherent." (*Id.* ¶¶ 56–60.)

In response to Plaintiff's sporadic work attendance, Mr. DiVito sent an email to Plaintiff on August 11, 2014, again requesting that Plaintiff provide additional medical documentation for his part-time workplace accommodation request. (DE 103-4, Ex. 28.) That email also reminded Plaintiff that his position was a full-time one, where "regular and predictable attendance is an essential function of the job." (*Id.*) During an in-person meeting between Plaintiff and Mr. DiVito on August 13, 2014, Plaintiff stated that he felt his workplace accommodation request was futile because even if it was approved, he would not be able to work, even on a part-time basis. (*Id.* ¶ 63.) In an email to Plaintiff dated August 14, 2014, Mr. DiVito recommended that Plaintiff make an accommodation request for an additional unpaid leave of absence, and that any unplanned absences would be unpaid. (DE 103-4, Ex. 31.) In a subsequent email to Plaintiff dated August 28, 2014, Mr. DiVito again requested that Plaintiff provide documentation for any workplace accommodation request. In that letter, DiVito warned that should Plaintiff choose not to provide such documents any "further unplanned absences or unapproved schedule changes will not be permitted" and that should Plaintiff refuse to engage in the interactive process with Human Resources, he would be "subject to discipline up to and including termination." (DE 103-4, Ex. 33.)

By letter dated October 3, 2014, Mr. DiVito again informed Plaintiff that his continued practice of only working a few hours a day was negatively impacting his department. As a result, DiVito wrote, Verizon would be placing

Plaintiff on unpaid personal leave beginning October 6, 2014. (DE 103-4, Ex. 36.)

Plaintiff testified that at that time, there was no accommodation that would enable him to return to work to perform the essential functions of his job. (*Id.* ¶ 64.) Plaintiff, through his attorney, provided Verizon's outside counsel with letters from his medical providers regarding his physical condition and his inability to work given his stroke-related "permanent disability." (DE 103-8; ¶¶ 73–80.) By letter dated October 23, 2014, Mr. DiVito informed Plaintiff that Verizon considered these documents as a request for an accommodation for an unpaid leave of absence through June 2015, which Verizon granted. (DE 103-4, Exs. 37, 43.) Plaintiff's counsel also provided Verizon another letter from Dr. Robert Latimer, another of Plaintiff's medical providers, which stated that he considered Plaintiff to be "totally and permanently disabled" and unable to work. (DE 103-8 ¶ 82.) Plaintiff testified in his deposition that he agreed with this diagnosis. (DE 103-4, Pl. Dep. Tr. 411:7-10.)

Plaintiff took a leave of absence from October 6, 2014 – May 2015. (DE 103-8 ¶ 84.) On June 1, 2015, Plaintiff was informed that following a successful appeal, his STD benefits were extended until August 12, 2014 (*Id.* ¶ 85.) On June 5, 2015, Ms. Louise Hand, Human Resources Business Partner at Verizon, sent a letter to Plaintiff informing him of the various employment options available to him, which included: (1) returning to work at Verizon; (2) requesting a workplace accommodation; (3) requesting an applicable leave of absence; (4) applying for disability or service pension, if eligible; or (5) terminating his employment with Verizon. (DE 103-4, Ex. 43.) The letter stated that Plaintiff had to decide his next step regarding his employment by June 19, 2015, or else the Company would assume that Plaintiff voluntarily resigned from the company effective June 22, 2015. (*Id.*)

In a letter dated June 18, 2015, to Verizon's outside counsel, Plaintiff's attorney requested that Mr. McBurrows receive an extension for an additional year on his leave of absence (presumably until June 2016). (DE 103-4, Ex. 44.)

Plaintiff's counsel provided supporting documentation of Plaintiff's physical condition, stating that Plaintiff was currently physically unable to work. (DE 103-8 ¶¶ 90–91.) Dr. Williams reported that at best, he would hope that "with appropriate counseling and therapy . . . [Plaintiff's] symptoms will improve over time." (DE 103-8 ¶ 91.) Dr. Williams's letter, however, did not provide any assurance that Plaintiff's symptoms would improve or any estimate of when that might occur. (Id. ¶ 92.) Given Plaintiff's total disability and inability to provide an anticipated return-to-work date, Verizon denied Plaintiff's request for a one-year extension of his leave of absence. (DE 103-4, Ex. 45.) Verizon terminated Plaintiff's employment effective June 25, 2015 (Id., Ex. 46.)

On April 2, 2015, Plaintiff applied for disability benefits from the United States Social Security Administration ("SSA"). He was awarded such benefits in September 2017. (DE 103-8 ¶¶ 101, 104.) In the administrative decision granting Plaintiff his SSA benefits, the administrative law judge determined that Plaintiff was not able to perform his past relevant work at Verizon, and that there were no jobs in the national economy that he was able to perform. (Id. ¶¶ 106-07.) Plaintiff testified that from the day of his stroke until his deposition, which spanned approximately four years, he has not applied for any jobs because he is not physically capable of working. (DE 103-4, Pl. Dep. Tr. at 285:1–22.)

## II.  **Motion for Summary Judgment**

### A.  **Legal standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (citing Peters v. Delaware River

*Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).

Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When the parties file cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468–69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.*, 19 F. Supp. 2d 254 (D.N.J.1998)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Philadelphia Housing Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir.1994). That one of the cross-motions is denied does not imply that the other must be granted. For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation and citations omitted).

## B.  Plaintiff's Accommodation Claim

Defendant Verizon moves for summary judgment on Count 1 of Plaintiff's SAC. Although the Complaint fails to clearly specify the particular cause of action being pled, I have previously interpreted that count as a claim of failure to accommodate a disability, in violation of NJLAD.[7] *See McBurrows v. Verizon*, No. 15-CV-6321 (KM), 2017 WL 1243145, at *4 (D.N.J. Feb. 17, 2017).

---

[7] Count 1 of the SAC is essentially the same claim as Count 2 of the FAC.

A failure to accommodate claim is "one of two distinct categories of disability discrimination claims; the other claim being disparate treatment discrimination, which is not present in this case." *Tynan v. Vicinage 13 of Superior Court*, 351 N.J. Super. 385, 397, 798 A.2d 648, 655 (App. Div. 2002) (citing *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 19, 800 A.2d 826, 837 (2002)). Here, too, no disparate treatment claim is made. New Jersey's Department of Law and Public Safety regulations require employers to make "make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." N.J. Admin. Code § 13:13-2.5.

An employer is required to accommodate an employee's disability, but it is not an insurer. A plaintiff asserting a failure to accommodate claim must "prove that at all material times he was able to perform the essential functions of his job, with or without accommodation." *Van de Pol v. Caesars Hotel Casino*, 979 F. Supp. 308, 312 (D.N.J. 1997) (citing *McNemar v. The Disney Store, Inc.*, 91 F.3d 610, 618 (3d Cir.1996)). An employer's duty to accommodate "extends only so far as necessary to allow a disabled employee to perform the essential functions of his job. It does not require acquiescence to the employee's every demand." *Tynan*, 351 N.J. Super. at 397 (internal citation and quotation marks omitted). "If an employer reasonably determines that an employee because of handicap cannot presently perform the job even with an accommodation, then the employer need not attempt reasonable accommodation." *Id.* (internal citation omitted). The employer is responsible for initiating an "informal interaction process" with the employee in order to determine what appropriate accommodation is necessary. *Id.* at 400.

A plaintiff asserting a claim for failure to accommodate a disability under the NJLAD must prove that: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to

assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 849 (3d Cir. 2016).

Here, it is undisputed that (1) Verizon was aware of Plaintiff's disability and (2) Plaintiff requested a workplace accommodation to work half-days until his physical condition improved. The parties, however, disagree on the third and fourth elements: (3) whether Verizon made a good faith effort to assist Plaintiff in seeking accommodations and (4) whether Plaintiff could have been reasonably accommodated but for Verizon's lack of good faith. Plaintiff alleges that Verizon did not properly accommodate his disability because Verizon forced him to return to work before he was medically able to do so, put him in a new position at the JEP desk which caused him additional stress and strain, and failed to provide proper accommodations when he did return to work.[8] (SAC 1 ¶¶ 6–8.)

Under ADA regulations, once an employer is on notice that an employee is requesting a workplace accommodation, "it may be necessary for the [employer] to initiate an informal interactive process with the [employee] in need of accommodation. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999). The NJLAD incorporates the analytical framework of the ADA, including the requirement of an interactive process. *Van de Pol*, 979 F. Supp. at 312. That interactive process requires that employers "make a good-faith effort to seek accommodations." *Taylor*, 184 F.3d at 317 (ADA case). Such a good faith effort can take a variety of forms; for example, the employer may "meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered

---

[8] Plaintiff also alleges that Defendants failed to provide him with "proper independent [medical] consultations" which constituted a "breach of contract." Plaintiff fails to identify the contract that was breached and how this allegation relates to the failure to accommodate claim. (SAC 1 ¶ 9.)

14

employee's request, and offer and discuss available alternatives when the request is too burdensome." *Id.*

Here, the record is replete with evidence that Verizon engaged in the interactive process in good faith. As to such efforts, the underlying facts are essentially undisputed.[9] On numerous occasions, Verizon invited Plaintiff to reach out to Verizon's Workplace Accommodation group in order to enable Plaintiff to return to work and perform his job. Those invitations included a written letter dated June 17, 2014 and emails dated August 11, 14, 28, 2014, October 3, 2014, and June 5, 2015, and various in-person meetings and phone calls throughout this time. (*See* DE 103-3, Exs. 12, 15; DE 103-4, Exs. 28, 29, 33, 43.) After Plaintiff reached out to the Workplace Accommodation group, he was asked to provide additional medical information so that MetLife could process his request. The record demonstrates multiple instances of Verizon's requesting Plaintiff to provide the proper documentation. (DE 103-3, Ex. 15.)

Eventually, Plaintiff's healthcare provider provided the medical forms. Plaintiff's request to work half-days was denied, however, because MetLife felt that the accommodation request was not "medically substantiated." (DE 103-3, Ex. 18.) In an email to Plaintiff, Ms. Cerminaro suggested that he send the denial email to his healthcare provider for a response, but Plaintiff failed to do so. (DE 103-3, Ex. 18.) As evidenced in multiple letters written by Verizon to Plaintiff, and confirmed by Plaintiff during his deposition, Plaintiff never reached out to MetLife to see why they denied his accommodation request or to inquire what additional documents might have been necessary to substantiate his claim.[10] Participation in the interactive process is an obligation on both

---

[9] I have declined to consider additional deposition transcripts that Plaintiff belatedly submitted. *See* n. 5, *supra*. At any rate, however, they would make no difference, as they do not call into question these dispositive facts.

[10] Plaintiff admitted during his deposition that he failed to provide additional documents to Verizon for his workplace accommodation claim, and did not bother contacting MetLife to see what additional documents would help medically substantiate his request:

parties, and Verizon should not be faulted "if after conferring with the employee to find possible accommodations, the employee then fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals." *Taylor*, 184 F.3d at 317.

---

Q. . . . Do you call MetLife in this time frame between the 11th and 14th and say, "What additional documents do you need?"

A. No.

Q. Did you ask your doctor, "Can you call MetLife and see what additional documents they need?"

A. No. I asked Tony DiVito.

Q. That's not what I'm asking you. I am asking you did you call your doctor or any of your health care providers –

A. I answered that. I said no.

(Pl. Dep. Tr. at 221:21–222:7)

Q. So did you call ask any of your healthcare providers, Dr. Williams or anyone and said, "Can you call MetLife and figure out what documents do they need?"

A. No.

Q. You only had that discussion you said with Tony DiVito?

A. Yes

(*Id.* at 222:11–18)

Q. To your knowledge, neither you nor Dr. Williams followed up with MetLife to confirm what documents they need?

A. Yes. I did not follow up. I don't believe -- I don't know what Dr. Williams did, I really don't. I never asked . . . .

Q. You have no personal knowledge of him doing so?

A. No.

Q. Following up with MetLife?

A. No, I don't know.

Q. To find out what documents they needed to substantiate your request for accommodation?

A. That is correct.

(*Id.* at 270:12–271:3)

Even after Plaintiff's accommodation request to work half-days was denied by MetLife, Verizon allowed Plaintiff to work half-days for two weeks from July 24, 2014 to August 6, 2014, notwithstanding that Plaintiff had not provided additional documentation to substantiate his accommodation request.[11] (DE 103-3, Ex. 18.) Even after Plaintiff was supposed to return to work full time, see n. 11, supra, he continued to leave work early even though he was not authorized to do so. (DE 103-3, Exs. 17, 22.) Eventually, Verizon provided another accommodation by placing him on an unpaid leave of absence beginning on October 6, 2014. (DE 103-4, Ex. 36.)

Part of Plaintiff's accommodation argument seems to be that Verizon should have done more to help him with the application process. Specifically, Plaintiff states that he expected Verizon to call MetLife on his behalf to try to have his short-term disability denial overturned. see Pl. Dep. Tr. at 355:14–356:22. An employer's obligation to find a reasonable accommodation for an employee, however, "does not require that any particular concession must be made by the employer." Tourtellotte, 636 F. App'x at 849 (internal quotation marks and citation omitted); see also Lopez v. Lopez, 997 F. Supp. 2d 256, 273 (D.N.J. 2014) ("While Defendants had a duty under the LAD to offer a reasonable accommodation, this duty does not 'cloak the disabled employee with the right to demand a particular accommodation.'"). Nor is there any specific requirement that the employer act as an advocate on the employee's behalf.

Expecting Verizon to overturn MetLife's denial of Plaintiff's short-term disability benefits—particularly when Plaintiff had already retained outside legal counsel to assist him with that process—is more than the law requires to demonstrate a good faith effort in the interactive process. The requirement of good faith is not especially burdensome. Here, Verizon exchanged multiple

---

[11] Plaintiff did not take Verizon's offer to work half days, and instead took paid time off (vacation days) because of his physical condition as well as bereavement days due to the passing of his father. (DE 103-4, Ex. 28).

letters and emails with Plaintiff, met with Plaintiff in-person, and scheduled calls with Plaintiff in order to work with him to provide a reasonable workplace accommodation. That is sufficient. Plaintiff has not satisfied the third element of a prima facie workplace failure to accommodate claim.

Additionally, Plaintiff cannot satisfy the fourth element of a workplace accommodation claim, because the evidence does not demonstrate that there was *any* way that Verizon could have found a reasonable accommodation that would have permitted his continued employment. Plaintiff himself denies that he is or was able to work. He claimed that he was totally disabled and unable to work in any job following his stroke in August 2013. On July 23, 2014, Plaintiff, through his attorney, informed MetLife and Verizon that he was unable "to resume regular employment until at least June of 2015, and that [he] may be under permanent lifetime disability and/or care." (DE 103-4, Ex. 23.) Plaintiff's physical inability to work was corroborated by multiple healthcare providers. Plaintiff admitted during his deposition that he was unable to work, even for a shortened four-hour day, because of his physical condition. (*See* DE 103-4, Pl. Dep. Tr. at 295:19–22, 297:16–23.) Plaintiff also admitted in his deposition that after his stroke, there was "no accommodation that would enable [him] to return to work to perform the essential functions of [his] job." (DE 103-4, Pl. Dep. Tr. at 327:12–17). In fact, Plaintiff contemporaneously told Mr. DiVito that he was unable to come back to work, even with an accommodation. *See id.* at 352:22–353:1.

That evidence of complete disability is confirmed by findings of the Social Security Administration. The administrative law judge in Plaintiff's social security disability benefits proceeding found factually that Plaintiff was "unable to perform his past relevant work" and that he was unable to perform any job existing in significant numbers in the national economy. (*See* DE 111, App'x at 7–8.) "If there is no job, anywhere, that the worker is capable of performing, then it would be difficult to hold the company liable for failing to design one for him." *Lopez*, 997 F. Supp. at 274 (citing *Mengine v. Runyon*, 114 F.3d 415,

417–20 (3d Cir.1997)). To find a job that could reasonably accommodate Plaintiff here would essentially require the court to "identify an effective accommodation that would be reasonable, yet result in a position that does not correspond to any position now existing in our economy." *Lopez*, 997 F. Supp. 2d at 274.

There is lurking in Plaintiff's arguments a notion that Verizon should have carried him as an employee for a longer period in hopes of his total or partial recovery. At the time, however, his own physician could provide no such prognosis. And there is no evidence, even now, that such recovery has occurred.

In short, Plaintiff cannot satisfy the third or fourth element of his reasonable accommodation claim, and summary judgment must be granted in favor of Verizon. Plaintiff's dependent claim for civil and punitive damages is dismissed as moot.

### C.     Judicial Estoppel Due to Plaintiff's SSA Disability Award

I have already considered the Plaintiff's Social Security disability award as part of the mix of evidence. Verizon argues separately, however, that Plaintiff is judicially estopped from asserting his failure-to-accommodate claim because of the SSA's determination that Plaintiff is "unable to perform his past relevant work" and because there are no jobs that he is able to perform. (*See* DE 103-7 at 8.) I agree, and accept estoppel as an alternative basis for my ruling.

Plaintiff applied for disability benefits from the SSA on April 2, 2015 (DE 103-4, Ex. 41.) Plaintiff represented in his SSDI application that he had not been able to work since his stroke. (*Id.*) The agency accepted that position, made factual findings in Plaintiff's favor, and awarded disability benefits.

"An application for Social Security Disability Insurance ("SSDI") benefits (particularly a successful one) may preclude a cognizable disability discrimination claim." *Lopez*, 997 F. Supp. at 273 (citing *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795 (1999)). Although Courts should not assume that an individual's disability discrimination claim is barred "merely

because prior representations or determinations of disability exist in the record," *Motley v. New Jersey State Police*, 196 F.3d 160, 165–66 (3d Cir. 1999), obtaining SSDI benefits can serve as evidence of an assertion that is inconsistent with the argument that a party is able to perform the essential functions of his job. *See Lopez*, 997 F. Supp. at 273 (citing *Cleveland*, 526 U.S. at 798). A plaintiff must be given an opportunity to explain this "apparent inconsistency." *Motley*, 196 F.3d at 166.

Here, Plaintiff has failed to meet this burden of explaining the apparent inconsistency. Having examined the facts of this case, I agree with Verizon that Plaintiff is judicially estopped from asserting his accommodation claim based on his SSDI application and award. As stated above, Plaintiff represented in his SSDI application that he is not able to work. (DE 103-4, Ex. 41.) The administrative law judge also found that (1) Plaintiff is unable to perform any past relevant work; (2) he cannot transfer any of his acquired job skills to any other occupations; (3) there are no jobs that exist in significant numbers in the national economy that he can perform; and (4) he has been "under a disability" as defined by the Social Security Act since August 13, 2013. (DE 111, App'x 1 at 7–8.)

Plaintiff argues in his cross-motion that *Lopez* is distinguishable from this case because the *Lopez* petitioner "used foul and abusive language to Managers and co-employees." (DE 111 at 32.) That fact does not affect the *Lopez* court's legal reasoning as to how an award of SSDI benefits can preclude a claim of disability discrimination. Thus, I also find that Plaintiff is judicially estopped from bringing a workplace accommodation claim because of his application for SSDI benefits and the findings of the SSA administrative law judge's findings.

### III.    Plaintiff's Cross-Motion for Summary Judgment[12]

Plaintiff has also cross-moved for summary judgment, on what I take to
be the following four issues: (1) that the denial of LTD benefits was a breach of
contract; (2) that Plaintiff is entitled to civil damages on his failure to
accommodate claim; (3) that summary judgment for Plaintiff is appropriate on
the "overall complex of issues" raised in this lawsuit; and (4) that the Court
should not consider Plaintiff's Social Security Disability Benefits in its damages
calculation and should enter a directed verdict "quashing the alleged duty of
mitigation and estoppel." (DE 111 at 33–37.)

### A.    Cross-Motion Points 2, 3, and 4

At the threshold, I will deny Points 2 and 4 of Plaintiff's cross-motion for
summary judgment. Point 2 seeks damages on the failure to accommodate
claim. Point 4 asks the court to sever Plaintiff's SSDI benefits from any
judgment of damages and for a "directed verdict quashing the alleged duty of
mitigation and estoppel." Having granted summary judgment in favor of
Verizon on liability, *see* Section II, *supra*, I do not reach issues concerning the
calculation of Plaintiff's damages.

I will also deny Point 3 of Plaintiff's cross-motion to the extent that it is
asking for damages in connection with the "loss of [Plaintiff's] potential for
health recovery" and any pain or suffering endured by Plaintiff due to the
stress Plaintiff endured at work which contributed to Plaintiff's current
physical condition. First, Plaintiff fails to cite to any facts in the record to
support his assertions that Verizon exacerbated or caused Plaintiff's current
physical condition. Second, any claim for damages based on physical injuries
which arise from his employment relates to Plaintiff's workers' compensation
lawsuit and is subsumed by the New Jersey Workers' Compensation Act. *See*

---

[12] The Court notes that Plaintiff's cross-motion does not comply with Local Civil
Rule 7.1(d)(1) and (e) for failure to include a notice of motion with certification of
service and failure to include a proposed order. However, in the interest of judicial
economy, the Court will set those deficiencies aside and consider the merits of
Plaintiff's motion. *See Laurora v. Bayer HealthCare LLC*, No. 16CV09041ESJAD, 2018
WL 3586272, at *1 n.1 (D.N.J. July 26, 2018).

DE 103-3, Pl. Dept. Tr. at 21:4–9; *see also Van Dunk v. Reckson Assocs. Realty Corp.*, 210 N.J. 449, 459 (2012).

### B. Cross-Motion Point 1: Long Term Disability Denial

Plaintiff asserts in Point 1 of his cross-motion that he is "entitled to summary judgment on the issue of LTD." (DE 111 at 29.) I interpret this Point as relating to Count Two of Plaintiff's SAC, which is essentially the same as Count Three in Plaintiff's prior FAC. I have already interpreted that prior Count as an ERISA claim for wrongful denial of short-term and long-term disability benefits from 2013 to 2015. *See McBurrows*, 2017 WL 1243145, at *2; *see also* SAC 2 ¶ 4.

Plaintiff argues in his cross-motion that he never received a "Notice of Termination" of his LTD benefits. Such notice, he says, was required as a matter of due process under the Fourteenth Amendment of the Constitution, since whatever contract he had with Verizon for LTD benefits constitutes "property." (DE 111 at 29.) Verizon's main arguments against summary judgment are that (1) any constitutional claims must be denied because Verizon is not a state actor; and (2) any claim for denial of LTD benefits is an ERISA claim, which may not be asserted against Verizon, but only against the Plan Committees. Verizon is substantially correct.[13]

---

[13]  Verizon makes two additional arguments which are not essential to my decision here.

The first is that Plaintiff cannot amend the claims in his SAC through his summary judgment briefing. Some four years into the case, in reaction to my grant of one summary judgment motion and after briefing of another, Plaintiff has filed a motion to file a Third Amended Complaint, attempting to add seven new counts. (DE 129, 130.) The proposed amendment will likely be futile, as it seems merely to reassert issues already disposed of in prior motions, and does not point to newly discovered facts that materially impact any of the legal claims.

Verizon's second argument is that the only claim against itself that survived the Court's earlier rulings is the failure to accommodate claim, so no other theories need be considered here. That is not quite correct. The "Procedural History" section of Verizon's Motion for Summary Judgment states that the only remaining claim against Verizon is Count 1 of the SAC, the failure to accommodate claim. Verizon argues that I "interpreted the Third, Fourth, and Fifth Counts [of the FAC] as ERISA claims (and as not asserted against Verizon)." (DE 103-1 at 18.) To be sure, I interpreted Counts Four

22

Beginning with the first argument, I must reject Plaintiff's constitutional claims out of hand. The Fourteenth Amendment of the Constitution is directed at the states, and it can be violated only by conduct that may fairly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S. Ct. 2744, 2747 (1982). Verizon is clearly not a state actor, and Plaintiff has not presented any evidence that Verizon acted under color of state law. *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 121 S. Ct. 924 (2001). As a result, I will deny Plaintiff's cross-motion for summary judgment on Point 1 alleging Plaintiff's due process claim relating to denial of LTD benefits. Additionally, as stated in my prior opinion, "a procedural defect in notice does not give rise to a substantive remedy." *See Lettrich v. J.C. Penney Co.*, 213 F.3d 765, 771 (3d Cir. 2000).

Moving to the second argument, Verizon correctly asserts that it is not the proper defendant for an ERISA claim. (*See* DE 121 at 22–23.) As stated in the Plan Opinion, Verizon's Plan for Group Insurance provides LTD benefits for employees who choose to enroll and pay premiums for such coverage. *McBurrows*, 2019 WL 2432088, at *2. The Plan is an employee benefit welfare plan governed by ERISA, and Plaintiff was a participant in the Plan (although he did not enroll for LTD coverage) while he was employed at Verizon. *Id.* The Plan provides that VCRC is the claims administrator with respect to enrollment and eligibility claims and appeals. *Id.* at *4. ERISA's civil enforcement provision, found in 29 U.S.C. § 1132(a)(1)(B), allows a participant or beneficiary of a plan to "recover benefits due to him under the terms of his plan." 20 U.S.C. § 1132(a)(1)(B). "In a § 1132(a)(1)(B) claim, the defendant is the plan itself (or plan administrators in their official capacities only)." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007); *see also Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc.*, 311 F. App'x 556, 558 (3d Cir. 2009) ("In a claim

---

and Five as having been asserted only against the Plan Committees. However, I did not make a similar statement regarding Count Three, which I interpreted to allege a wrongful denial of short term and long term disability benefits. *McBurrows*, 2017 WL 1243145, at *2–*3.

for wrongful denial of benefits under ERISA, the proper defendant is the plan itself or a person who controls the administration of benefits under the plan."). Thus, as to a claim of wrongful denial of LTD benefits, the proper defendant would be either Verizon's Plan for Group Insurance or VCRC, not Verizon itself. I therefore deny the Plaintiff's motion for summary judgment on the ERISA claim. Indeed, I will dismiss Claim 2 of the SAC, insofar as it is asserted against Verizon, with prejudice. *See Mechelle v. Shapiro*, No. CV 18-MC-0501, 2018 WL 4256865, at *3 (M.D. Pa. Sept. 6, 2018) (citing *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991) ("holding that court may dismiss complaint *sua sponte* 'when it is patently obvious that the plaintiff could not prevail on the facts alleged')).

The arguments discussed in this section are sufficient to dispose of Plaintiff's cross-motion for summary judgment, which is denied.

## IV. Motion for Reconsideration

Plaintiff also moves for reconsideration of my decision in the Plan Opinion, in which I granted the summary judgment motion filed on behalf of the Plan Committees. (*See* DE 120.) Plaintiff's reconsideration motion is based on (1) depositions that took place after the Plan Committee's motion for summary judgment was fully briefed, but before this Court issued its opinion; and (2) certain legal arguments, already considered by the Court, which Plaintiff raised in his opposition to the Plan Committees' motion for summary judgment. For the following reasons, I will deny Plaintiff's motion for reconsideration.

### A. Legal standard

Reconsideration is an extraordinary remedy that is to be granted "very sparingly." L. Civ. R. 7.1(i) cmt. 6(d); *Friedman v. Bank of Am., N.A.*, 2012 WL 3146875, at *2 (D.N.J. Aug. 1, 2012). Generally, reconsideration is granted in three scenarios: "(1) when there has been an intervening change in the law; (2) when new evidence has become available; or (3) when necessary to correct a clear error of law or to prevent manifest injustice." *Strumolo v. Steelcase, Inc.*,

No. CV131932KMMAH, 2017 WL 1217129, at *1 (D.N.J. Mar. 30, 2017) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). The Local Rules require that the movant specify "the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." *See Egloff v. New Jersey Air Nat'l Guard*, 684 F. Supp. 1275, 1279 (D.N.J. 1988). Evidence or arguments that were available at the time of the original decision will not support a motion for reconsideration. *Damiano v. Sony Music Entm't, Inc.*, 975 F. Supp. 623, 636 (D.N.J. 1997); *see also North River Ins. Co.*, 52 F.3d at 1218; *Bapu Corp. v. Choice Hotels Int'l, Inc.*, 2010 WL 5418972, at *4 (D.N.J. Dec. 23, 2010) (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)).

Reconsideration is not warranted, however, where (1) the movant simply recites the cases and repeats the arguments previously analyzed by the court, *Arista Recs., Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 416 (D.N.J. 2005); *see also Tehan*, 111 F. Supp. 2d at 549 ("Motions for reconsideration will not be granted where a party simply asks the court to analyze the same facts and cases it had already considered . . . ."); or (2) the movant has filed the motion merely to disagree with or relitigate the court's initial decision, *id.*; *see Morris v. Siemens Components, Inc.*, 938 F. Supp. 277, 278 (D.N.J. 1996) ("A party's mere disagreement with a decision of the district court should be raised in the ordinary appellate process and is inappropriate on a motion for reargument."). The motion is not a vehicle for a litigant to raise new arguments or present evidence that could have been raised prior to the initial judgment. *See Bapu Corp. v. Choice Hotels Int'l Inc.*, Civ. No. 07–5938, 2010 WL 5418972 (D.N.J. Dec. 23, 2010) (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)).

### B.    Availability of New Evidence

Plaintiff asks the Court to reconsider its prior opinion based on certain deposition testimony of the Plaintiff himself, James Dacey, Anthony DiVito, and

Tom Nugent.[14] These depositions were taken between October 22, 2018 and January 9, 2019. The Plan Committees' motion for summary judgment was fully briefed by November 15, 2018, when they filed their reply brief in further support of their motion for summary judgment. (*See* DE 82.) I decided the Plan Committees' motion for summary judgment in an Opinion and Order dated June 11, 2019. (*See* DE 109, DE 110.) As stated above, evidence that was available at the time of the original *decision* will not support a motion for reconsideration. *See Damiano*, 975 F. Supp. at 636. Plaintiff had, at the least, approximately five months to request to supplement the record with excerpts from the deposition testimonies prior to my issuing an opinion. He made no such motion. Plaintiff cannot now ask the Court to consider the deposition transcripts that were fully available prior to my Plan Opinion decision as grounds for reconsideration, since those transcripts are not considered newly available evidence.

Regardless, however, and in the alternative, I find that the newly-cited excerpts from the deposition transcripts would have had no impact on the Plan Opinion. Under the arbitrary and capricious standard of review, which is the correct standard of review regarding VCRC's decisions on whether Plaintiff was entitled to receive LTD and STD benefits, the court is limited to evidence presented to the plan administrator when the benefit determination was made. *Luby v. Teamsters Health, Welfare, & Pension Tr. Funds*, 944 F.2d 1176, 1184 (3d Cir. 1991). For this independent reason, the deposition transcripts are not "new evidence" that would warrant granting Plaintiff's motion for reconsideration.

### C. Clear Error of Law/Manifest Injustice

A motion for reconsideration will also be granted when it is necessary to correct a clear error of law or prevent manifest injustice. Here, Plaintiff states

---

[14] Exhibits E and F to Plaintiff's Motion for Reconsideration were already part of the record in the Plan Committees' motion for summary judgment. These documents are clearly not "new evidence," as I reviewed them before filing the Plan Opinion.

his disagreement with the Court's interpretation of *Lettrich* and reprises his argument that his due process rights were violated when his LTD benefits (which he had never applied for or obtained) were "cutoff." (DE 120 at 15.) Plaintiff argues that I distinguished *Lettrich* "because of the amount of time involved" and that I seemed to "place upon the plaintiff a retroactive affirmative duty to have made inquiry in 2007 and subsequent years as to what kind of long term disability coverage he had- and if it had changed." (*Id.*) Plaintiff misreads the Plan Opinion. In that Opinion, I distinguished between Plaintiff's situation and the one presented in *Lettrich* by noting that here, the terms of coverage for LTD benefits were presented to Plaintiff unambiguously, and that he was clearly informed that he "must enroll in the LTD plan in order to be eligible for LTD coverage." *McBurrows*, 2019 WL 2432088, at *11. Moreover, I noted that, unlike the employee in *Lettrich*, Mr. McBurrows was provided annual enrollment materials confirming his prior coverage and directing him to review his benefits. My opinion does not, as Plaintiff claims, impose a "*retroactive* affirmative duty" to inquire about LTD coverage. Rather, it holds that Plaintiff, like every covered employee, is obligated to read the enrollment materials and choose the type of insurance coverage he wishes to purchase on an annual basis.

Finally, Plaintiff renews his prior due process argument. As stated above and in the Plan Opinion, "a procedural defect in notice does not give rise to a substantive remedy." *See* Section III.A, *supra*; *see also Lettrich*, 213 F.3d at 771. Moreover, Plaintiff's constitutional due process argument cannot stand because the Fourteenth Amendment of the Constitution is directed towards states and state actors, which the Plan Committees are not. *See* Section III.A. As a result, Plaintiff has not met his burden in demonstrating that the Plan Opinion contains a clear error of law or would cause manifest injustice.

Because Plaintiff has not presented any intervening change in the law, any new evidence, or the need to correct a clear legal error in my prior opinion, I will deny Plaintiff's motion for reconsideration.

## V. Conclusion

For the reasons set forth above, I will grant Verizon's motion for summary judgment regarding Count One of the SAC (DE 103), dismiss Count Two of the SAC, deny Plaintiff's cross-motion for summary judgment (DE 111) and deny Plaintiff's Motion for Reconsideration (DE 120). An appropriate order follows.

Dated: December 18, 2019

**Kevin McNulty**
**United States District Judge**